UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOARD OF TRUSTEES OF THE EMPLOYEE PAINTERS' TRUST,<br><br>Plaintiff,<br><br>v.<br><br>WRIGHTWAY MECHANICAL, LLC, an Idaho limited liability company, et al.,<br><br>Defendants. | CASE NO. 2:25-cv-00619<br><br>ORDER ON MOTION FOR DEFAULT JUDGMENT |

This is an action for damages and injunctive relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* This matter is before the Court on Plaintiff's Motion for Default Judgment. Dkt. No. 15. Having reviewed the motion and the relevant record, the Court GRANTS Plaintiff's motion.

### I. BACKGROUND

This case concerns an employer's failure to adhere to reporting requirements and failure to make contributions to a labor-management employee-benefit trust (a "Taft-Hartley Trust").

**A. The Parties**

Plaintiff is the Board of Trustees for The Employee Painters' Trust ("Trust"), an "express trust" created and operated pursuant to Section 302 of the Labor Management Relations Act

ORDER ON MOTION FOR DEFAULT JUDGMENT – 1

("LMRA" or "Taft-Hartley Act"), 29 U.S.C. § 186(c), and ERISA. *See* Dkt. No. 1 (complaint) ¶¶ 5–6. Plaintiff is a "fiduciary" of the Trust within the meaning of ERISA "with respect to collection of contributions due to the Trust and related matters." *Id.* ¶ 7 (citing 29 U.S.C. §§ 1102(a), 1002(16), (21)). The Trust was created and is administered in Seattle, Washington. *Id.* ¶ 8.

Defendants are Wrightway Mechanical, LLC ("Wrightway Mechanical"), an Idaho limited liability company (*id.* ¶ 9), and Steven Wright ("Wright"), "the primary owner, member, manager, governing person, officer, director, principal and/or key employee of Wrightway Mechanical" (*id.* ¶ 14). Wright is responsible for Wrightway Mechanical's adherence to and performance of its obligations with respect to the Trust. *See id.* Plaintiff has also named as Defendants 10 anonymous individual John Does and 10 anonymous Roe Corporations. *Id.* ¶ 15.

**B.      The Collective Bargaining Agreement and Trust Agreement**

Labor–Management relations are governed by the Standard Form of Union Agreement for Sheet Metal, Roofing, Ventilating and Air Conditioning Contracting Divisions of the Construction Industry ("collective bargaining agreement" or "CBA") between the Northwest Regional Council of SMART,[1] Local Union 55 ("Union"); and the Inland Northwest Sheet Metal Contractors Association ("SMACNA"). Dkt. No. 1 ¶ 19. The Union "represent[s] employees in the construction industry in the States of Washington, Idaho, and surrounding areas." *Id.* ¶ 16. SMACNA "is an employer association representing employers in the construction industry in the States of Washington, Idaho, and surrounding areas." *Id.* ¶ 18. In short, for collective-bargaining purposes, the Union represents labor, and SMACNA represents management. Wrightway Mechanical is a member of SMACNA. *Id.* ¶ 21.

---

[1] Sheet Metal Air Rail Transportation Workers' Union.

On October 11, 2016, Wrightway Mechanical signed the CBA, thereby agreeing to be bound by its terms. *Id.* ¶¶ 19, 22. Under the CBA, Wrightway Mechanical also "agreed to be bound to the Trust Agreement governing the Trust and the Policies and Procedures ("Policies") adopted by" Plaintiff. *Id.* ¶ 23. Among other things, the CBA defines "Covered Work," which is labor that obligates a signatory employer to contribute to the Trust and to submit to Plaintiff "monthly written reports . . . showing all hours of work performed by its employees who perform Covered Work . . . ." *Id.* ¶ 29. "[E]ven if no work was performed during a given work month," Wrightway Mechanical was still obligated "to submit these monthly remittance reports to Plaintiff." *Id.* The CBA, Trust Agreement, and Policies also obligate Wrightway Mechanical "to properly pay to Plaintiff fringe benefit contributions to the Trust on a monthly basis and at specified rates for each and every hour of work performed by its employees who perform Covered Work." *Id.* ¶ 30. Should Wrightway Mechanical fail to timely remit reports or contributions to Plaintiff, the CBA, Trust Agreement, and Policies obligate Wrightway Mechanical "to pay, in addition to the contributions owed, interest at the rate of twelve percent (12%) and liquidated damages at the rate of one percent (1%) per month up to twenty percent (20%) until paid for all contributions which are owed, or $100, whichever is greater." *Id.* ¶ 32.

The CBA, Trust Agreement, and Policies also impose on Wrightway Mechanical record-keeping obligations. *See id.* ¶¶ 34–35. Where Wrightway Mechanical fails to comply with these obligations, "it shall be conclusively presumed that each employee of Wrightway Mechanical was engaged in Covered Work for forty (40) hours in each week in which such employee performed any Covered Work for Wrightway Mechanical." *Id.* ¶ 36. "[F]ringe benefit contributions due the Trust shall be computed based upon a forty (40) hour week." *Id.* If Wrightway Mechanical fails to maintain records "adequate and sufficient to readily identify all

types of hours of work performed by all of its employees," there arises a rebuttable presumption that all of the insufficiently documented work is, in fact, Covered Work. *Id.* ¶ 37.

The record-keeping provisions of the CBA, Trust Agreement, and Policies are complemented by audit provisions, which requires Wrightway Mechanical to provide certain records to an auditor upon request. *Id.* ¶ 35. If Wrightway Mechanical does not cooperate with an audit "such that the Auditor is unable to determine the amount of covered hours worked by the employees, determine the amount of contributions owed to the Trust, or determine the benefits due or which may become due," the Trust may deem Wrightway Mechanical's "average annual contributions to the Trust for the previous three (3) years, or $100,000, whichever is greater," to be "unremitted contributions for each year covered by the Audit Period." *Id.* ¶ 38. If an audit "reveals an underpayment or deficiency in reporting or payment of contributions, the CBA, Trust Agreement, and Policies require Wrightway Mechanical to pay to the Trust the underpaid contributions, plus accrued interest, liquidated damages, audit fees, attorney's fees, and costs." *Id.* ¶ 40.

Finally, should Plaintiff need to retain legal counsel because of Wrightway Mechanical's delinquencies with respect to Trust contributions, or to "compel Wrightway Mechanical to furnish . . . , or permit the examination of[,] books or records or information . . . , Wrightway Mechanical shall reimburse the Trust for all attorney's fees and court costs and all audit fees incurred . . . ." *Id.* ¶¶ 33, 39.

Under the terms of the Trust Agreement, "persons occupying positions akin to those of corporate officers, like Steven Wright, are personally liable for contributions and related damages owed to the Trust . . . ." *Id.* ¶ 64.

C. **Plaintiff's Allegations**

In 2024, Plaintiff engaged a professional accounting firm to conduct a "payroll compliance review"—i.e., an audit—of Wrightway Mechanical's records for the period between January 1, 2021, and March 31, 2024. *Id.* ¶ 41. On or about April 9, 2024, Plaintiff advised Wrightway Mechanical that it was conducting the audit and requested that Wrightway Mechanical provide records. *Id.* ¶¶ 42–43. Wrightway Mechanical did not respond, and on or about April 22, 2024, Plaintiff again advised Wrightway Mechanical about the audit and requested records. *Id.* ¶¶ 45–46. Plaintiff's second letter notified Wrightway Mechanical that "[f]ailure to contact [the auditor] by April 29, 2024, w[ould] result in referral to Trust Counsel . . . ." *Id.* ¶ 47. Wrightway Mechanical still did not provide the requested records. *Id.* ¶ 48. The Trust retained counsel, and on or about June 12, 2024, Trust counsel sent a letter to Wrightway Mechanical, "to the attention of Steven Wright," demanding "complete documents and records." *Id.* ¶ 49. On or about July 11, 2024, Trust counsel emailed Wright to "address[] [his] concerns . . . regarding the [a]udit." *Id.* ¶ 50. Trust counsel also demanded Wrightway Mechanical's full cooperation with the audit and again requested records. *Id.*

On or about September 18, 2024, Defendants provided Trust counsel with records. *Id.* ¶ 51. Wrightway advised Trust counsel that the records "contained all payroll records requested by the Auditor." *Id.* Upon review, the auditor determined that the records were not, in fact complete, and that they had been redacted such that the auditor "could not determine the amount of covered hours worked by the employees, the amount of contributions owed to the Trust, or the benefits due or which may become due to such employees . . . ." *Id.* ¶ 53. On or about December 13, 2024, Trust counsel advised Wrightway Mechanical that "the records were incomplete and the redactions were improper." *Id.* ¶ 54. Trust counsel demanded complete and unredacted records. *Id.* Wrightway Mechanical did not respond to this demand. *Id.* On or about January 10,

2025, Trust counsel advised Wrightway Mechanical that Plaintiff intended to "proceed with legal action due to the Defendants' failure to respond." *Id.* ¶ 55. Wrightway Mechanical did not respond. *Id.* Plaintiff characterizes Wrightway Mechanical's participation in the audit as something other than "full[] compl[iance]," because Wrightway Mechanical did not "make all requested and necessary records available for inspection by the Auditor." *Id.* ¶ 56. Consequently, the "Trust [was] unable to conduct the Audit" (*id.* ¶ 57), and "Plaintiff [was] unable to determine the extent of any contributions, interest, or liquidated damages owed . . ." (*id.* ¶ 58).

On April 7, 2025, Plaintiff filed the instant civil action, alleging three causes of action: breach of contract (*id.* ¶¶ 67–75) and violation of ERISA (*id.* ¶¶ 76–86), as against Wrightway Mechanical; and breach of written trust agreement (*id.* ¶¶ 87–91), as against Steven Wright. Plaintiff seeks injunctive relief, specific performance, damages plus interest, attorney fees, and costs. *Id.* at 15–17.

Neither Defendant answered the Complaint. On May 16, 2025, Plaintiff moved for an entry of default against Wrightway Mechanical and Wright (Dkt. No. 8), and on May 22, 2025, the Clerk entered both Defendants into default (Dkt. No. 10).

"Shortly after the Default was entered," Wright "contacted Plaintiff's counsel and began providing documents to the Plaintiff for the audit." Dkt. No. 16 (Smith Decl.) ¶ 6. Defendants' records permitted Plaintiff to proceed with the audit. Dkt. No. 17 (Tenberg Decl.) ¶ 13. The Trust retained an accounting firm to conduct "a payroll compliance audit of Wrightway for the period of January 1, 2021, through March 31, 2025." *Id.* ¶ 14. The audit revealed that Wrightway Mechanical failed to report 18,398.58 hours of Covered Work that had not been reported to the Trust. *Id.* The auditor "calculated that Wrightway failed to remit $95,297.97 in contributions to the Trust." *Id.* ¶ 15. As of September 19, 2025, the interest on these missing contributions had accrued to $32,513.95. *Id.* Liquidated damages had accrued to $17,952.42. *Id.* By operation of

the civil enforcement provisions of ERISA, the amount of liquidated damages is increased to match the accrued interest. *See id.*; 29 U.S.C. § 1132(g)(2)(C). The Trust incurred audit fees of $4,772.50. Dkt. No. 17 ¶ 15. Additionally, the Trust incurred attorney fees of $12,032.00 and $685.22 in costs. *Id.* ¶ 16. In sum Plaintiff alleges that it is owed the following monies:

| | |
|---|---:|
| Unpaid Contributions | $95,297.97 |
| Interest | $32,513.95 |
| Liquidated Damages | $32,513.95 |
| Audit Fees | $4,772.50 |
| Attorney Fees | $12,032.00 |
| Costs | $685.22 |
| **Total** | **$177,815.59** |

## II.    LEGAL STANDARD

A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (citation omitted). Default judgment is "ordinarily disfavored," because courts prefer to decide cases "upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (citation omitted) (affirming district court's denial of default judgment). When considering whether to exercise discretion in entering default judgments, courts consider a variety of factors, including:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of a plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72. "None of the factors is dispositive in itself; instead, [courts] must balance all seven." *Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 884 (S.D. Cal. 2021) (citation omitted); *e.g.*, *Bd. of Trs. of San Mateo Hotel Emps. & Rest. Emps. Welfare Fund v. H. Young Enters., Inc.*, No. C08-2619, 2009 WL 1033665, at *4–5 (N.D. Cal. Apr. 13, 2009) (finding second and third *Eitel* factors dispositive when deciding to enter default judgment).

Courts reviewing motions for default judgment must accept the allegations in the complaint as true, except for those regarding facts related to the amount of damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citation omitted); *accord Little v. Edward Wolff & Assocs. LLC*, No. C21-227, 2023 WL 6196863, at *3 (W.D. Wash. Sept. 22, 2023) (quoting *Cripps*, 980 F.2d at 1267). Damages are also limited to what was reasonably pleaded. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

### III.  DISCUSSION

**A.  Jurisdiction**

"To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

**1.  Subject-Matter Jurisdiction**

The Court has subject-matter jurisdiction over this case because it has been brought under the provisions of ERISA, 29 U.S.C. §§ 1132, 1145. *See* Dkt. No. 1 ¶¶ 1, 2, 76–86. *See* 28 U.S.C. § 1331 (describing federal-question jurisdiction).

**2.  Personal Jurisdiction**

"ERISA authorizes fiduciaries to bring an enforcement action in any district court 'where the plan is administered, where the breach took place, or where a defendant resides or may be found.'" *Sacramento Area Elec. Workers Health & Welfare Tr. v. FAMCO*, No. C17-3823, 2019 WL 13203780, at *3 (N.D. Cal. Nov. 20, 2019) (quoting 29 U.S.C. § 1132(e)(2)). The plan is administered in Seattle, Washington (Dkt. No. 1 ¶ 8) which is in the Western District of

Washington. "By statute, ERISA authorizes nationwide service of process and sets forth that personal jurisdiction may be established where service is carried out on a defendant anywhere in the United States." *Bd. of Trs. of Nw. Metal Crafts Tr. Fund v. Pac. Ship Repair & Fabrication, Inc.*, No. C24-142, 2025 WL 2322693, at *2 (W.D. Wash. Aug. 12, 2025); *see Cripps*, 980 F.2d at 1267 (discussing ERISA's provision for nationwide service of process). Here, the record indicates that Defendant Wrightway Mechanical was served process on April 23, 2025 (Dkt. No. 6 (affidavit of service) at 2), as was Defendant Wright (Dkt. No. 7 (affidavit of service) at 2). Plaintiff effected service within the 90-day time period prescribed by Federal Rule of Civil Procedure 4(m). Therefore, the Court may exercise personal jurisdiction over both Defendant Wrightway Mechanical and Defendant Wright.

**B.     Default Judgment**

The Court turns to the *Eitel* factors.

### 1. Factor One: Prejudice to Plaintiff

"The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered." *GS Holistic, LLC v. City Smoke Corp.*, No. C24-1286, 2025 WL 1345083, at *2 (W.D. Wash. May 8, 2025) (citation omitted). Without entry of default judgment, Plaintiff will be prejudiced. Plaintiff has attempted to litigate this case and vindicate its rights against Defendants. Defendants, however, have failed to appear or participate in this litigation, despite having been properly served. "Without default judgment, [Plaintiff] will suffer prejudice because it will 'be denied the right to judicial resolution' of its claim and will be 'without other recourse for recovery.'" *Id.* (quoting *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005)).

Therefore, the first *Eitel* factor weighs in favor of entering default judgment.

### 2. Factors Two and Three: Merits of Plaintiff's Claim and Sufficiency of Complaint

The second and third *Eitel* factors examine "the substantive merits of the plaintiff's claim and the sufficiency of the plaintiff's complaint." *Id.* In the Ninth Circuit, these factors are frequently analyzed together. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (explaining how the Ninth Circuit has suggested that the second and third *Eitel* factors require a plaintiff to state a claim on which they can recover). These factors weigh in favor of an entry of default judgment if the allegations in a complaint sufficiently state a claim upon which relief can be granted. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Courts apply the *Iqbal-Twombly* standard, where a complaint is sufficient if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

#### a.  *Breach of Contract*

Plaintiff's breach-of-contract claim is preempted by ERISA and is thus unviable here. *See Nielsen v. Unum Life Ins. Co. of Am.*, 58 F. Supp. 3d 1152, 1162–63 (W.D. Wash. 2014) (citing *Olson v. Gen. Dynamics Corp.*, 960 F.2d 1418, 1424 (9th Cir. 1991)). "By seeking benefits under the Plan, Plaintiff's breach of contract claims are made in connection with and thereby relate to an ERISA plan and are thus expressly preempted." *Id.* at 1163; *see also Wagoner v. First Fleet Inc.*, No. C22-990, 2022 WL 3213266, at *3 (D. Ariz. Aug. 9, 2022) ("The Supreme Court has determined that state common law causes of action, including breach of contract . . . , 'relate to' an employee benefit plan and therefore fall under ERISA's express preemption clause, section 514(a).") (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 43, 53 (1987)). "As Plaintiff's . . . Cause[] of Action for breach of contract [is] preempted by ERISA, [it] fail[s] to

state a claim for which relief can be granted . . . ." *Nielsen*, 58 F. Supp. 3d at 1163.

     **b.**  *Violation of ERISA*

  A fiduciary's right to audit an employer to inquire into its compliance with a multiemployer plan is part and parcel of "the policies and protections embodied in ERISA." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 568 (1985). "An examination of the structure of ERISA in light of the particular duties and powers of trustees under the common law leaves no doubt as to the validity and weight of audit goals . . . ." *Id.* at 571. Where the legal instruments that establish and govern such a plan—such as the CBA and Trust Agreement here—obligate an employer to comply with an audit, and the employer does not so comply, a fiduciary of the plan maintains a cause of action under ERISA. *See Operating Eng'rs Health & Welfare Tr. Fund for N. Cal. v. Precision Drilling, Inc.*, 782 F. Supp. 3d 784, 790–91 (N.D. Cal. 2025) (citing 29 U.S.C. § 1132(g)(2)). Here, Plaintiff has alleged that it advised Wrightway Mechanical on multiple occasions that it intended to audit the company for the period between January 1, 2021, and March 31, 2024. *See* Dkt. No. 1 ¶¶ 41, 46, 49–50. Plaintiff alleges further that Wrightway Mechanical did not provide the records that Plaintiff needed to complete the audit. *Id.* ¶ 56. These facts, as pleaded, are sufficient to establish an ERISA claim.

     **c.**  *Breach of Written Trust Agreement*

  Plaintiff's third cause of action seeks to hold Defendant Wright personally liable for Defendant Wrightway Mechanical's failure to comply with the reporting and auditing requirements of the CBA and Trust Agreement. Plaintiff alleges that Wrightway Mechanical signed the CBA on or about October 11, 2016 (Dkt. No. 1 ¶ 19), and Wright's signature appears on the CBA's signature page (Dkt. No. 15-3 at 2). Wright's execution of the CBA bound Wrightway Mechanical "to the terms and conditions of the CBA, successor agreements, and/or

amendments thereto." Dkt. No. 1 ¶ 22. It also bound Wrightway Mechanical to the Trust Agreement. Dkt. No. 15-3 at 30 ("The Employer . . . agrees to be bound by the terms of the individual Trust instruments.").

As to Wright's liability beyond that of Wrightway Mechanical, "[t]here is no question the collective bargaining and trust agreements contemplated personal liability on the part of [Wright]." *Emp. Painters' Trust v. J & B Finishes*, 77 F.3d 1188, 1192 (9th Cir. 1996). The Trust Agreement provides that,

> [I]n the event that any corporate Participating Employer which is obligated to make contributions to the Trust fails to make such contributions, the President, the Treasurer, and any other corporate officer who is responsible for payment of contributions by the corporation to the Trust fund shall be each individually liable for the payment of contributions and any other amount due under this Article VIII, and under applicable Federal law, 29 U.S.C. Section 1132(g).

Dkt. No. 15-2 at 26. Accordingly, pursuant to the terms to which Wrightway Mechanical executed, Wright has joint and several liability with Wrightway Mechanical for its delinquent contributions, late fees, interest, attorney fees, and costs of collection. *See Emp. Painters' Tr. Health & Welfare Fund v. Pac. Nw. Contractors, Inc.*, No. C11-5271, 2011 WL 5119375, at *7 (W.D. Wash. Oct. 27, 2011); *see Emp. Painters' Tr. Health & Welfare Fund v. Seattle Structures, LLC*, No. C11-5265, 2012 WL 4511625, at *2 (W.D. Wash. Oct. 2, 2012) (finding corporate officers personally liable for employer's delinquency on trust fund contributions); *W. Wash. Painters Defined Contribution Pension Tr. v. Western Indus., Inc.*, No. C09-826, 2012 WL 3704993, at *18 (W.D. Wash. Aug. 27, 2012) (same); *Emp. Painters' Tr. Health & Welfare Fund v. Bessey*, No. C08-5205, 2009 WL 3347588, at *3 (W.D. Wash. Oct. 15, 2009) (same). Therefore, Plaintiff has sufficiently pleaded a cause of action against Defendant Wright.

Having assessed the sufficiency of Plaintiff's claims, the Court concludes that the second and third *Eitel* factors weigh in favor of entering default judgment.

### 3. Factor Four: Sum of Money at Stake

The fourth *Eitel* factor requires the Court to "consider the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. This factor weighs in favor of default when "the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). "[W]hen the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014) (citation and quotations omitted).

Here, Plaintiff seeks total judgement in the amount of $177,815.59. Dkt. No. 15 at 7. This represents $95,297.97 in unpaid contributions; $32,513.95 in interest; $32,513.95 in liquidated damages; $4,772.50 in audit fees, $12,032.00 in attorney fees, and $685.22 in costs. *Id.* The remedies requested are specifically authorized under ERISA and the Parties' agreements. *See* 29 U.S.C. § 1132(g)(2); Dkt. No. 15-2 at 24–25. Therefore, the Court concludes that the recovery sought is proportional to the harm caused by Defendants' conduct, which constitutes failing to timely remit reports and pay the required contributions and late fees. *See Bds. of Trs. of Nw. Ironworkers Health & Sec. Fund v. Peterson Rebar Placement, LLC*, No. C22-1541, 2023 WL 4492367, at *4 (W.D. Wash. July 12, 2023) (concluding that fourth *Eitel* factor weighed in favor of default judgment where defendants did not appear and "defendants' obligations were outlined in several agreements").

Therefore, the fourth *Eitel* factor weighs in favor of entry of default judgment.

### 4. Factor Five: Possibility of Dispute of Material Facts

Because Defendants have not appeared, the Court must accept as true all well-pleaded

ORDER ON MOTION FOR DEFAULT JUDGMENT – 13

allegations in the complaint, other than those related to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). There is little possibility that the core, material facts are in dispute. "When default has been entered, courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (citation omitted). "Where the moving party 'has supported its claims with ample evidence, and [the defaulting party] has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment.'" *Jung v. Liberty Mut. Fire Ins.*, No. C22-5127, 2023 WL 3204595, at *4 (W.D. Wash. May 2, 2023) (quoting *Landstar Ranger*, 725 F. Supp. 2d at 922). There is nothing here to suggest a possible dispute of material facts.

Therefore, the fifth *Eitel* factor weighs in favor of default judgment. *See Bds. of Trs. of Locs. 302 & 612 of Int'l Union of Operating Eng'rs Constr. Indus. Health & Sec. Fund v. Barry Civil Constr., Inc.*, No. C21-209, 2022 WL 17444075, at *4 (W.D. Wash. Dec. 6, 2022) (concluding that fifth *Eitel* factor weighed in favor of default judgment where defendants did not appear and "defendants' obligations were outlined in several agreements").

### 5. Factor Six: Whether Default is Due to Excusable Neglect

The sixth *Eitel* factor considers whether Defendants' default can be attributed to excusable neglect. *See PepsiCo*, 238 F. Supp. 2d at 1177. "There is little possibility of excusable neglect when the plaintiff properly serves the defendant and the defendant is aware of the litigation." *Mesa Underwriters Specialty Ins. Co. v. Hulett*, No. C21-8284, 2022 WL 17218505, at *6 (C.D. Cal. Oct. 26, 2022) (citation omitted). Here, a process server personally served Defendants with summonses and the complaint on April 23, 2025. Dkt. Nos. 6, 7 (affidavits of service). Defendants' deadline to answer the complaint was therefore May 14, 2025. *See* Fed. R.

Civ. P. 12(a)(1)(A)(i); Fed. R. Civ. P. 6(a)(1). Neither Defendant filed an answer. On May 16, 2025, Plaintiff moved for an entry of default. Dkt. No. 8. There is nothing in the record to indicate that Defendants lacked notice of the action or that Defendants were misled. Indeed, shortly after default was entered, Defendant Wright then provided Plaintiff with documents (Dkt. No. 16 ¶ 6), demonstrating affirmative knowledge of the case. Accordingly, the Court concludes that Defendants' failure to answer the complaint was not due to excusable neglect.

Therefore, the sixth *Eitel* factor weighs in favor of default judgment.

### 6. Factor Seven: Strong Policy in Favor of Decision on the Merits

The Court maintains a strong policy preference in favor of resolution of Plaintiff's claims on the merits. Whenever it is reasonably possible, courts should decide cases upon their merits. *See Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). But "this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. Federal Rule of Civil Procedure 55(a) "allows a court to decide a case before the merits are heard if defendant fails to appear and defend." *Landstar Ranger*, 725 F. Supp. 2d at 922. Here, Defendants have not appeared and have not participated in this case, let alone defended themselves, in any way.

Therefore, "[s]ince [D]efendant[s] failed to respond to [P]laintiff's claims, the seventh *Eitel* factor does not preclude the entry of default judgment against it." *Landstar Ranger*, 725 F. Supp. 2d at 922.

\*    \*    \*

Because the *Eitel* factors weigh heavily in favor of default judgment, the Court concludes that entry of default judgment is appropriate here with respect to Plaintiff's second and third claims against Defendants.

### C.  Requested Relief

Under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in

ORDER ON MOTION FOR DEFAULT JUDGMENT – 15

kind from, or exceed in amount, what is demanded in the pleadings." But a plaintiff need not specify an exact amount in its complaint in order to comply with Rule 54(c)'s requirement and to prevail on a motion for default judgment. *See Henry v. Sneiders*, 490 F.2d 315, 317 & n.2 (9th Cir. 1974). Plaintiff "is required to present evidence to 'prove up' the damages that [it] is seeking." *Olive v. Robinson*, No. C20-356, 2023 WL 346622, at *7 (W.D. Wash. Jan. 20, 2023) (first citing *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1053–54 (C.D. Cal. 2011), then citing Fed. R. Civ. P. 55(b), then citing LCR 55(b)(2)). "Plaintiff must support a motion for default judgment with a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought." LCR 55(b)(2). Here, Plaintiff seeks to recover unpaid contributions, interest, liquidated damages, audit fees, attorney fees, and litigation costs. *See* Dkt. No. 15 at 7. These damages are included in Plaintiff's prayer for relief in its original complaint. *See* Dkt. No. 1 at 15–17; *see also Henry*, 490 F.2d at 317 n.2.[2]

### 1. Liability of Both Defendants

Under the terms of the Trust Agreement, "the President, the Treasurer, and any other corporate officer who is responsible for payment of contributions by the corporation to the Trust fund shall be each individually liable for the payment of contributions and any other amount due . . . ." Dkt. No. 15-2 at 26. Therefore, because Defendant Wright is

> primary owner, member, manager, governing person, officer, director, principal and/or key employee of Wrightway Mechanical, whose employment duties required decision making regarding the operations of Wrightway Mechanical, procurement and negotiation of contracts, hiring/firing of work force, directing labor relations, project management, keeping corporate records and company books, managing financial affairs, payment of expenses and accounts payable, tracking employee hours, preparing and

---

[2] Unlike the complaint, Plaintiff's motion for default judgment does not request injunctive relief, nor does it seek an "award of $100,000 for each year covered by the Extended Audit Period as unremitted contributions for the Defendants' failure to maintain and provide complete and unredacted records to the Auditor for the Audit." *Compare* Dkt. No. 15 at 5, *with* Dkt. No. 1 at 15–16.

>   processing payroll and remitting reports, contributions, payments
>   to the Trust for each hour of covered labor performed, and
>   complying with the Trust's requests for audit of Wrightway
>   Mechanical's records.

(Dkt. No. 1 ¶ 14), Wright is personally liable for the damages alleged by Plaintiff.

### 2.  Unpaid Contributions Liquidated Damages, Interest, and Audit Fees

The CBA and Trust Agreement authorize Plaintiff to recover unpaid contributions, liquidated damages, interest, and audit fees. *See* Dkt. No. 15-2 at 24–25; Dkt. No. 17 ¶¶ 8–10; Dkt. No. 18 ¶¶ 11–13. These agreements contain specific provisions for calculating the contributions to be made and the interest and liquidated damages to be assessed for delinquent contributions. *See* Dkt. No. 15-2 at 24–25; Dkt. No. 17 ¶¶ 8–10; Dkt. No. 18 ¶¶ 11–13. They also provide that the employer will be liable for any auditor fees incurred in the collection of delinquent contributions. *See* Dkt. No. 15-2 at 25. Moreover, under ERISA, awards of unpaid contributions, liquidated damages, and interest are required for successful claims of unpaid contributions brought by trust funds against employers. *See* 29 U.S.C. § 1132(g)(2)(A)–(C); *Nw. Adm'rs v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996).[3]

Plaintiff has filed declarations with attached exhibits that demonstrate the unpaid contributions, liquidated damages, interest, and auditing feels calculations. *See* Dkt. No. 17 ¶¶ 15–16; Dkt. No. 18 ¶¶ 9–14; Dkt. No. 15-6 at 3–5. Based on the terms of the CBA and Trust Agreement, and as substantiated by the evidence submitted by Plaintiff, the Court concludes that Plaintiff is entitled to recover: (1) $95,297.97 in unpaid contributions for the January 1, 2021, through March 31, 2025, delinquent period (*see* Dkt. No. 17 ¶ 15; Dkt. No. 18 ¶ 10);

---

[3] "To be entitled to a mandatory award under [29 U.S.C.] § 1132(g)(2), the following three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award." *Albertson's, Inc.*, 104 F.3d at 257 (citation omitted).

ORDER ON MOTION FOR DEFAULT JUDGMENT – 17

(2) $32,513.95 in accrued interest on the January 1, 2021, through March 31, 2025, delinquent contributions (*see* Dkt. No. 17 ¶ 15; Dkt. No. 18 ¶ 12); (3) $32,513.95 in liquidated damages for the January 1, 2021, through March 31, 2025, delinquent contributions (*see* Dkt. No. 17 ¶ 15; Dkt. No. 18 ¶ 13); and (4) $4,772.50 in audit accounting fees (*see* Dkt. No. 17 ¶ 15; Dkt. No. 18 ¶ 14).

### 3.     Attorney Fees and Costs

The CBA and Trust Agreement also provide that an employer shall be liable for reasonable attorney fees and litigation costs incurred in recovering delinquent payments. *See* Dkt. No. 15-2 at 25; Dkt. No. 17 ¶ 12. Similarly, ERISA provides that the court must award "reasonable attorneys' fees and costs of the action" when a plaintiff obtains a judgment in its favor in an action such as this. 29 U.S.C. § 1132(g)(2)(D); *Albertson's, Inc.*, 104 F.3d at 257.

In Wesley J. Smith's Declaration, Smith states that four attorneys and two paralegals worked on this matter. Dkt. No. 16 ¶ 12. In the aggregate, the attorneys worked for 27.2 hours at a rate of $200 per hour and 26.9 hours at a rate of $255 per hour. *Id.* One paralegal worked 0.2 hours at a rate of $155 per hour; another paralegal worked 1.6 hours at a rate of $125 per hour and 2.4 hours at a rate of $145 per hour. *Id.* In total, these professionals worked for 58.3 hours and accrued fees of $12,032.00. *Id.* Smith also provided itemized statements that describe the work performed in detail and identify who performed it (*id.* at 12–19), professional biographical information about those who performed the work (*id.* ¶ 22), and descriptions of "Time and Labor Required," "Amount Involved and Results Obtained," "Novelty and Difficulty of Questions Presented," "Skill Required to Perform the Legal Service Properly," "Preclusion of Other Employment," Fee Information, and "Time Limitations Imposed by the Client or the Circumstances." *Id.* ¶¶ 14–21. Michelle Tenberg, an employee of BeneSys, the authorized plan administrator for the Employee Painters' Trust, avers that Plaintiff incurred $685.22 in litigation

costs. Dkt. No. 17 ¶ 16; *see also* Dkt. No. 16 at 18–19. The Court finds the billing rates, tasks performed, time spent, and litigations costs incurred reasonable and therefore recoverable under the terms of the CBA, Trust Agreement, and ERISA. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (describing how courts generally calculate "reasonable" attorney fees). Accordingly, Plaintiff is entitled to recover $12,032.00 in attorney fees and $685.22 in costs.

In sum, the Court GRANTS Plaintiff's request for relief in its entirety.

## IV.   CONCLUSION

Accordingly, the Court grants Plaintiff's motion for default judgment (Dkt. No. 15). Specifically, it is hereby ORDERED:

(1) The Court GRANTS default judgment against Defendant Wrightway Mechanical and Defendant Wright;

(2) The Court GRANTS Plaintiff's request for $95,297.97 in unpaid contributions for the January 1, 2021, through March 31, 2025, delinquent period; $32,513.95 in accrued interest on the January 1, 2021, through March 31, 2025, delinquent contributions; $32,513.95 in liquidated damages for the January 1, 2021, through March 31, 2025, delinquent contributions; and $4,772.50 in audit accounting fees.

(3) The Court GRANTS Plaintiff's request for $12,032.00 in attorney fees and $685.22 in litigation costs.

Dated this 30th day of October 2025.

Tana Lin
United States District Judge